**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DALE W. CUNNINGHAM,            )     CASE NO. 1:13-CV-2487
                             )
           Plaintiff,      )
                             )     MAGISTRATE JUDGE
       v.                 )     VECCHIARELLI
                             )
CAROLYN W. COLVIN,         )
      Acting Commissioner of Social )
      Security,            )     **MEMORANDUM OPINION AND**
                             )     **ORDER**
              Defendant.    )

Plaintiff, Dale W. Cunningham ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.   PROCEDURAL HISTORY

On March 26, 2009, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of January 26, 2009 ("March 2009 Application").  (Administrative Transcript ("Tr.") 318, 380.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 224.)  In July 2010, an ALJ conducted a hearing on Plaintiff's March 2009 Application.  (Tr. 61-105.)  On October 27, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 116-27.)  Plaintiff requested review by the Appeals Council.  (Tr. 241-42.)

On March 21, 2011, while his request for review of his January 2009 Application was still pending, Plaintiff filed a second application for DIB and SSI, alleging a disability onset date of October 28, 2010 ("March 2011 Application).  (Tr. 338, 352.)  The application was denied initially and upon reconsideration, and Plaintiff requested an administrative hearing.  (Tr. 271.)

On May 15, 2012, the Appeals Council granted Plaintiff's request for review of the October 2010 ALJ decision denying his March 2009 Application.  (Tr. 195.)  The Appeals Council consolidated proceedings in the March 2009 Application with proceedings in the March 2011 Application, and directed that an ALJ conduct a hearing on both applications. (Tr. 195-97.)

On August 16, 2012, an ALJ conducted the hearing required by the Appeals Council.  (Tr. 24-60.)  Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE").  (Tr. 24.)  On February 8, 2013, the ALJ issued a decision finding that Plaintiff had not been disabled at any time between January 26, 2009 and the date of the ALJ's decision.  (Tr. 1138.)

Plaintiff requested Appeals Council review of the February 2013 ALJ decision.  (Tr. 6.)  On July 22, 2013, the Appeals Council granted Petitioner's request for review, and notified Plaintiff that it intended to issue a partially favorable decision, finding him disabled as of February 7, 2013, but affirming the ALJ's decision with respect to the period of time from January 26, 2009 through February 6, 2013.  (Tr. 312-17.)  Plaintiff filed a statement agreeing that he was disabled on February 7, 2013, and arguing that he was also disabled during the earlier relevant period.  (Tr. 512-13.)

On September 9, 2013, the Appeals Council issued a decision finding that Plaintiff

2

was disabled as of February 7, 2013, but finding that he was not disabled prior to that date. (Tr. 1115-20.)  That decision constitutes the final decision of the Commissioner in this case.

On November 8, 2013, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 17, 23, 24, 25.)  Plaintiff argues that the Appeals Council erred in analyzing the opinions of his treating physician and his chiropractor when it determined that he was not disabled for the period from January 26, 2009 to February 7, 2013.

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was born in May 1958.  (Tr. 318.)  He had past relevant work as a car body repairperson.  (Tr. 385.)  He had less than a tenth grade education.  (Tr. 54.)

### B.   Medical Evidence[1]

#### 1.   Medical Reports

On January 5, 2009, Plaintiff reported to family physician Patrick N. Andre, M.D., that he had been experiencing anxiety, characterized by shaking, headaches, burning eyes, nausea and night sweats, for the prior four days.  (Tr. 522.)  Plaintiff reported a history of hepatitis C.  (*Id.*)  Dr. Andre diagnosed Plaintiff with adjustment disorder with

---

[1] Plaintiff's arguments address the Commissioner's decision regarding Plaintiff's physical impairments, specifically the Appeals Council's analysis of the opinions of his treating physician and a chiropractor. The record contains evidence related to Plaintiff's complaints of mental impairments, including depression.  It also contains numerous records from providers who addressed medical conditions other than those addressed by his treating physician and the chiropractor.  Accordingly, this Memorandum Order and Opinion discusses only those medical records relevant to Plaintiff's arguments in this Court.

anxious mood, and prescribed Lexapro.  (Tr. 523.)  Three days later, Plaintiff reported

feeling better on the medication.  (Tr. 520.)

On March 23, 2009, gastroenterologist Michael B. Ibach, M.D., examined Plaintiff to

assess his hepatitis C.  (Tr. 528-30.)  Plaintiff reported periods of nausea, shaking and

weight loss.  (Tr. 528.)  Dr. Ibach diagnosed Plaintiff with chronic hepatitis C, but noted

that Plaintiff had no peripheral stigmata of chronic liver disease.  (Tr. 529.)  Dr. Ibach

recommended that Plaintiff undergo Interferon and Ribavirin therapy, but Plaintiff declined

to do so until he obtained medical benefits.  (*Id.*)

An August 28, 2009 image of Plaintiff's left shoulder revealed moderate rotator cuff

tendinosis with a shallow partial-thickness cuff tear.  (Tr. 563.)  An image of Plaintiff's

lumbar spine taken that same date showed herniated discs at L3-4 and L4-5.  (Tr. 565.)

On September 8, 2009, chiropractor Geoffrey Poyle, D.C., examined Plaintiff, who

complained of back, shoulder and neck pain.[2]  (Tr. 569.)  He recommended that Plaintiff

use ice and heat to treat the pain.  (*Id.*)  On December 5, 2009, Dr. Poyle completed a

medical source statement, in which he indicated that he had treated Plaintiff since October

1998.  (Tr. 568.)  He reported that Plaintiff had a rotator cuff tear, disc injuries, and left

shoulder and lower back pain.  (*Id.*)  He opined that Plaintiff had difficulty with fine and

gross manipulation in his left upper and right lower extremities.  (*Id.*)  He also indicated that

Plaintiff had "limitations" in using these extremities, but did not specify the limitations.  (*Id.*)

On July 28, 2010, family physician Monica Seo, M.D., examined Plaintiff, who

_____

[2] The reports of the August 2009 scans indicated that Dr. Poyle ordered the
images.  (Tr. 563, 565.)  The record, however, contains no treatment notes from Dr. Poyle
from any date earlier than September 8, 2009.

4

complained of a lump on his neck.  (Tr. 953.)  Plaintiff reported that the lump had been

dime-sized for approximately six months, but had recently swollen to the size of a

baseball.  (*Id.*)  Dr. Seo diagnosed Plaintiff with a cyst and prescribed an antibiotic.  (*Id.*)

On August 24, 2010, Dr. Seo examined Plaintiff for "comprehensive problem

evaluation."  (Tr. 949.)  During the examination, Plaintiff denied any joint swelling, crepitus,

joint pain, back pain, or loss of range of motion.  (Tr. 950.)  Dr. Seo diagnosed Plaintiff with

a smoking-related wheeze, benign essential tremors, and hepatitis C.  (Tr. 951.)  She

recommended smoking cessation, a neurology consult related to Plaintiff's tremors, a

gastroenterology consult related to Plaintiff's hepatitis C, and immunizations.  (*Id.*)

On September 23, 2010, Plaintiff complained to Dr. Seo of burning, itching and

blurred vision in his eyes.  (Tr. 947.)  Dr. Seo diagnosed Plaintiff with sinusitis/rhinitis.  (*Id.*)

On January 4, 2011, Plaintiff reported a recent emergency room visit related to his

tremors, as well as pain in his left groin.  (Tr. 945.)  Dr. Seo instructed Plaintiff to follow up

with a neurologist for his tremors, and recommended that he follow up with an orthopedic

physician for the pain in his leg.  (*Id.*)  On January 25, 2011, Dr. Seo noted Plaintiff's

complaint of anxiety symptoms.  (Tr. 940.)  Dr. Seo prescribed Prozac.  (*Id.*)

On a date subsequent to January 18, 2011,[3] Dr. Poyle completed a state agency

medical form.  (Tr. 744-45.)  He opined that Plaintiff was limited to: a total of two hours of

standing and/or walking in an eight-hour day, in no more than five minute increments; a

total of three hours of sitting in an eight-hour day, in 30 minute increments.  (Tr. 744.)  He

---

[3] The state agency form does not provide a space for the medical provider to list a
date on which he or she completes the form.  Rather, the form requests the date of the
most recent examination.

5

stated that Plaintiff could not lift due to his rotator cuff tear. (*Id.*)  He opined that Plaintiff was: extremely limited in his ability to push/pull and bend; and moderately limited in his ability to reach with his left upper extremity, handle, use repetitive foot movements, and see.  (*Id.*)  He stated that Plaintiff's limitations were due to disc injuries, a rotator cuff tear, depression and tremors.  (*Id.*)  Dr. Poyle opined that Plaintiff was unemployable.  (*Id.*)

On a date subsequent to January 25, 2011, Dr. Seo completed a state agency medical form.  (Tr. 747-48.)  She opined that Plaintiff could: stand and/or walk for two hours in an eight-hour workday, in five minute increments; and sit for three hours, in 30 minute increments.  (Tr. 747.)  She noted Plaintiff's report that he could not lift any weight due to his rotator cuff tear.  (*Id.*)  She opined that Plaintiff was: extremely limited in his ability to push/pull (noting, "can only do 5 minutes at a time"), and bend ("has immediate pain in back"); and moderately limited in his ability to  handle ("difficulty with left arm[,] right arm okay but limited by tremors"), use repetitive foot movements ("difficulty with tremors"), and see ("blurs vision 25-30% of the time").  (*Id.*)  Although Dr. Seo did not assign a specific limitation to Plaintiff's ability to reach, she noted, "can't with l[ef]t arm due to pain; right arm ok[ay]."  (*Id.*)  She opined that Plaintiff was unemployable.  (*Id.*)

On January 31, 2011, neurologist Andrey S. Stojic, M.D.; Ph.D., examined Plaintiff, who complained of tremors.  (Tr. 834.)  Examination revealed mild postural tremors but "also tremors that fluctuate in severity with mild distractability."  (Tr. 836.)  Dr. Stojic diagnosed Plaintiff with tremors, non-epileptic seizures, neck pain, headaches and depression/anxiety.  (Tr. 837.)  She prescribed Lyrica.  (*Id.*)

On February 14, 2011, Plaintiff reported to the emergency department at Lakewood Hospital, complaining of tremors in his pelvic area, left arm and both legs.  (Tr. 869.)

6

During an examination, Plaintiff's tremors stopped with resistance to his lower extremities. (*Id.*)  When the examining physician noted this, Plaintiff opined that it was likely the result of medication he had been given by the emergency department staff.  (*Id.*)  Plaintiff did not complain of any joint or muscle pain or swelling.  (Tr. 871.)  The emergency room physician opined that the tremors were non-physiologic and "stopped when [Plaintiff] was distracted then remained gone when we commented that they ha[d] stopped."  (Tr. 872.)  The physician adjusted Plaintiff's medication and recommended that he follow up with a neurologist.  (*Id.*)

On February 16, 2011, Plaintiff reported to the emergency department at EMH Regional Medical Center, complaining of tremors after taking his medication.  (Tr. 895.)  He reported having daily tremors for the prior two months, and stated that he believed he was having an allergic reaction to the medication.  (*Id.*)  Emergency physicians diagnosed him with chronic chest pain, and prescribed him Valium.  (Tr. 902.)

On March 7, 2011, neurologist Kamal R. Chemali, M.D., performed a neuromascular assessment of Plaintiff. (Tr. 763-66.)  Plaintiff described a 16-year history of chronic pain, as well as problems performing daily personal activities.  (Tr. 765-66.)  Dr. Chemali did not detect any neuromascular weakness.  (Tr. 764.)

On March 9, 2011, neurologist Anwar Ahmed, M.D., examined Plaintiff "for a second opinion regarding his history of tremor."  (Tr. 965.)  Plaintiff reported experiencing "whole body tremor" at least five times each week.  (*Id.*)  Dr. Ahmed noted that Plaintiff's tremors were distractable.  (Tr. 966.)  Dr. Ahmed recommended that Plaintiff undergo testing for hypothyroidism and Wilson's disease. (*Id.*)  He opined that the etiology of Plaintiff's tremors was unclear, but advised Plaintiff to follow up on an as-needed basis.

7

(*Id.*)

On March 15, 2011, Dr. Stojic examined Plaintiff. (Tr. 845-46.) He opined that

Plaintiff's tremors and other symptoms were "largely due to stress." (Tr. 845.) On August

23, 2011, Steven G. Gunzler, M.D., examined Plaintiff in consultation for his tremors. (Tr.

1068-72.) Plaintiff reported first experiencing tremors in 1995, and that he experienced an

episode of tremors approximately once or twice each month. (Tr. 1068-69.) Dr. Gunzler

noted continuous tremors affecting Plaintiff's arms, neck and trunk. (Tr. 1070.) He opined

that Plaintiff had "an early and subtle sign" of Parkinson's disease, and noted Plaintiff's

report of a history of that disease in his paternal family. (*Id.*) Dr. Gunzler recommended

that Plaintiff take primidone, and that he re-examine Plaintiff within the following months to

determine whether there were any more signs of Parkinson's disease. (Tr. 1071.)

On December 6, 2011, Dr. Gunzler noted Plaintiff's report that his tremors

continued unchanged. (Tr. 1073.) Plaintiff sat comfortably in the chair, but also stood and

paced. (Tr. 1074.) Dr. Gunzler noted mild resting tremors, mild action tremors and

rigidity. (*Id.*) Plaintiff had a slightly stooped posture and shuffling gait. (*Id.*)

On March 6, 2012, Dr. Gunzler noted Plaintiff's complaint of increased tremors,

including episodes of lower eyelid twitching and tremors in his head and torso. (Tr. 1075.)

Dr. Gunzler observed mild intermittent resting tremors, moderate action tremors, mild

rigidity and mild rapid repetitive movements. (Tr. 1076.) He opined that Plaintiff could be

in the early stages of Parkinson's disease. (*Id.*)

### 2. Agency Reports

On April 14, 2009, agency consulting physician Joe G. Allison, M.D., performed a

physical residual functional capacity ("RFC") assessment. (Tr. 530-38.) He opined that

8

Plaintiff could: lift 50 pounds occasionally and 25 pounds frequently; and stand and/or walk and sit for six hours in an eight-hour workday.  (Tr. 531-34.)  Dr. Allison noted that he had reviewed records from Drs. Andre and Ibach.  (Tr. 537.)  Dr. Allison opined that Plaintiff's RFC was reduced "due to pain [and] fatigue," but that Plaintiff was capable of sustaining an eight-hour workday.  (*Id.*)

On December 30, 2009, agency consulting physician Gary Hinzman, M.D., performed a physical RFC assessment.  (Tr. 600-07.)  He opined that Plaintiff could: lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit for six hours in an eight-hour day; occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; and never balance.  (Tr. 601-02.)  Dr. Hinzman stated that Plaintiff could occasionally reach overhead and frequently reach in other directions with his left arm.  (Tr. 603.)

**C.    Hearing Testimony**

   **1.    Plaintiff's Hearing Testimony**

At his November 2012 administrative hearing, Plaintiff testified as follows:

He stopped working a car body repairperson because he could no longer perform the physical aspect of the work.  (Tr. 31.)  He experienced body tremors, and had difficulties caused by hepatitis C and rheumatoid arthritis.  (Tr. 31-32.)  He felt like "the tremors cause me problems getting the thoughts from my brain to my mouth."  (Tr. 32.)  Eventually, his medical issues caused him to miss work, and his employer replaced him.  (Tr. 32-33.)

Plaintiff lived in a garage apartment at his son's home.  (Tr. 34.)  His son paid all of the utility bills.  (Tr. 35.)  Plaintiff tried to help his son with yard work, but was not able to sustain activity for more than 15 minutes without experiencing tremors and shaking.  (*Id.*)

Plaintiff's body tremors affected his ability to prepare food, eat and engage in other daily personal activities.  (Tr. 35-36.)  Plaintiff's son and daughter-in-law did his grocery shopping for him.  (Tr. 36-37.)  If he walked even a short distance, Plaintiff experienced shaking and dizziness.  (Tr. 37.)  Plaintiff experienced shaking spells even when sedentary, while watching television.  (*Id.*)

Plaintiff was "sore daily from head to toe," due to an enzyme deficiency.[4]  (Tr. 37-38.)  He also woke up in the middle of the night "actually choking.  I can't get a breath."  (Tr. 38.)  Various medications exacerbated the effects of the enzyme deficiency, so Plaintiff was afraid to try new medications.  (Tr. 39-40.)  Plaintiff was rarely left alone, as his physicians were concerned that he may fall as a result of his tremors. (Tr. 43.)  The extent of his entertainment was sitting outside by the fire.  (Tr. 44.)  He could not tolerate crowds or loud noises.  (*Id.*)

### 2.    Vocational Expert's Hearing Testimony

The ALJ described the following hypothetical individual of Plaintiff's age, education and work experience:

> [T]his hypothetical worker can sit, stand or walk for six hours
> each during an eight-hour day[;] lift, carry, push or pull 10

---

[4] Plaintiff's enzyme deficiency is not relevant to any of his arguments.  The record, however, reflects that, in August 1995, he was diagnosed with butyrylcholinesterase deficiency.  (Tr. 738-39.)  According to the National Institute of Health, this enzyme deficiency "is a condition that results in increased sensitivity to certain muscle relaxant drugs used during general anesthesia, called choline esters. . . .  People with this enzyme deficiency may also have increased sensitivity to certain other drugs, including the local anesthetic procaine, and to specific agricultural pesticides. The condition causes no other signs or symptoms and is usually not discovered until an abnormal drug reaction occurs." Genetics Home Reference, available at http://ghr.nlm.nih.gov/condition/pseudocholinesterase-deficiency (last visited Dec. 9, 2014.)

> pounds frequently, 20 pounds occasionally.  This hypothetical
> worker is precluded from using ladders, ropes and scaffolds.
> He is precluded from work above shoulder lever bilaterally.  He
> is precluded from exposure to work place hazards such as
> unprotected heights and unprotected moving machinery.  he is
> precluded from occupational driving.  And he is limited to
> occasional fine manipulation which means I guess the
> D[ictionary of] O[ccupational] T[itles] fingering and feeling
> would be another way of saying that.

(Tr. 55.)  The VE testified that the hypothetical worker would not be able to perform

Plaintiff's past relevant work.  (Tr. 55.)  She opined that the hypothetical worker would be

able to perform work as a housekeeper/cleaner, sales attendant, or cafeteria attendant.

(Tr. 56-57.)


## III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he

establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of*

*Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled

when he cannot perform "substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled

by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v.*

*Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he

is not currently engaged in "substantial gainful activity" at the time he seeks disability

benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that

he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

In its September 9, 2013 decision, the Appeals Council made the following findings of fact and conclusions of law:

1.  The claimant met the special earnings requirements of the Act on January 26, 2009, the date the claimant stated he became unable to work and continues to meet them through September 30, 2014.  The claimant has not engaged in substantial gainful activity since January 26, 2009.

2.  The claimant has the following severe impairments: cervical degenerative disc disease, left rotator cuff tendinitis; left rotator cuff tenonosis; tremor, hepatitis C, but does not have an impairment or combination of impairments which is listed in, or medical equal to, an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3.  The claimant's combination of impairments results in the following limitations on his ability to perform work-related activities: The claimant can lift, carry, push, and/or pull ten pounds frequently and twenty

pounds occasionally.  The claimant can sit for six hours in an eight-hour day and can stand or walk for six hours in an eight-hour work day.  The claimant can never use ladders, ropes or scaffolds.  The claimant can never perform work above the shoulder level.  The claimant can occasionally finger and feel.  The claimant must avoid all exposure to workplace hazards and occupational driving.  In view of the above limitations, the claimant has the RFC to perform a reduced range of the light exertional level.

4.  The claimant's subjective complaints are not fully credible for the reasons identified in the ALJ's hearing decision.

5.  The claimant is unable to perform past relevant work.

6.  Prior to February 7, 2013, the claimant is considered an individual closely approaching advanced age.  As of February 7, 2013, the claimant is considered to be an individual of advanced age.

7.  The claimant has a limited or less education.  The claimant's past relevant work is skilled.  The claimant has no skills that are transferrable to skilled or semiskilled occupations within his RFC.

8.  Based on the claimant's age, education and work experience, if the claimant had the capacity to perform the full range of the light exertional level, 20 CFR 404.1569 and 416.969 and Rule 202.11 in Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2 would direct a conclusion of "not disabled."  Although the claimant's exertional and non-exertional limitations do not allow him to perform the full range of the light exertional level, using the above-cited Rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform.  Prior to February 7, 2013, the claimant could perform other work as a housekeeping cleaner, sales attendant and cafeteria attendant.

As of February 7, 2013, the claimant is considered an individual of advanced age.  As of this date, the claimant was within a few months of reaching an older age category and the claimant had an additional adverse vocational factor because of his tenth grade education. Based on the claimant's attainment of advanced age on February 7, 2013, Rule 202.02 directs a finding of "disabled."

9.  The claimant has been disabled, as defined in the Act, since February 7, 2013.

(Tr. 1119-20.)

13

## V.    LAW & ANALYSIS

A.    **Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the Appeals Council failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

B.    **Plaintiff's Assignment of Error**

1.    **Scope of Review**

In his arguments, Plaintiff refers to the ALJ's decision throughout his brief.  The Government contends that, because the Appeals Council issued a subsequent decision in

14

this matter, Plaintiff's reliance on the ALJ decision is misplaced.  Because the Appeals Council granted Plaintiff's request for review and then issued a decision, that decision is the final decision of the Commissioner in this case.  *See* 20 C.F.R. § 404.981 ("The Appeals Council decision. . . is binding unless you or another party file an action in Federal district court, or the decision is revised.").  Review of the Appeals Council decision, however, reveals that the Appeals Council "affirmed" many of the ALJ's conclusions, including those relevant to the analysis of medical opinion evidence:

> The Appeals Council affirms the [ALJ's] statements regarding the pertinent provisions of the [Act], Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case and the evidentiary facts, as applicable.

> The Appeals Council affirms the [ALJ's] findings or conclusions regarding whether [Plaintiff] is disabled for the period prior to February 7, 2013.

> *   *   *

> The regulations provide for a sequential evaluation process in determining whether a claimant is disabled.  The Appeals Council affirms the [ALJ's] findings at steps 1, 2, 3, and 4 of the sequential evaluation process.

> *   *   *

> *The Appeals Council concludes the [ALJ's] assessment of [Plaintiff's RFC] is supported by the medical evidence of record and that the rules for evaluating medical opinions have been properly considered.*

(Tr. 1115-16 (emphasis added).)  Where the Appeals Council relies on or adopts the findings of an ALJ, "the substantial evidence standard of review applies to the findings regardless of whether they were made by the Appeals Council, the ALJ, or were made by the Appeals Council in reliance on the ALJ's findings."  *Taylor v. Comm'r of Soc. Sec.*, 91

15

F.3d 144, *4, n.2 (6th Cir. 1996) (unpublished decision).  Accordingly, this Court reviews the conclusions of the ALJ to the extent that the Appeals Council affirmed them.[5]

### 2.  Medical Opinion Evidence

Plaintiff contends that substantial evidence does not support the Appeals Council's conclusion because the Appeals Council erred in analyzing the opinions of Plaintiff's treating physician, Dr. Seo, and of his chiropractor, Dr. Poyle.  In his decision, the ALJ made the following observations that are relevant to this issue, and which are supported by the record:

• In May 2009, Plaintiff reported that he was able to take care of household chores, take care of his personal hygiene, grocery shop, pay bills, manage a bank account and manage his medication needs.

• While Plaintiff had severe hepatitis C, the record showed that he had no evidence of liver disease.

• Plaintiff's allegations regarding the severity of his tremors were not credible. Plaintiff reported that the tremors began before his alleged onset date, a time when he was able to work.  Further, the record revealed that Plaintiff's tremors stopped when he was distracted by an examining physician, who had recommended medication to control the tremors.[6]

• The record contained no evidence either that Plaintiff was prescribed an ambulatory aid or that he experienced any adverse side effects from any of his medications.

(Tr. 1131, 1135.)

In addition to affirming the ALJ's assessment of Plaintiff's RFC and his analysis of

_____

[5] Indeed, review of the two decisions reflects that the only difference between them is that the Appeals Council concluded that Petitioner was disabled, under the requirements of the Act, as of February 7, 2013.  (Tr. 1118-20.)  The Appeals Council's conclusion was not based any different assessment of the record evidence or of Plaintiff's credibility, but, rather, on its application of the Medical-Vocational Rules to the specific facts of Plaintiff's case (*i.e.*, his limited education and advanced age).

[6] The Appeals Council adopted the ALJ's credibility finding.  (Tr. 1119.)

16

the medical opinions in the record, the Appeals Council made the following observations that are relevant to the medical opinions at issue, and which are supported by the record:

• Agency consulting physician Dr. Hinzman's assessment that Plaintiff could perform light work with occasional postural positions was consistent with evidence that Plaintiff reported no joint or back pain, and retained normal muscle bulk and strength.

• Plaintiff's ability to perform light work with occasional postural positions and fingering or feeling was consistent with treatment notes reflecting that Plaintiff had a medium frequency, distractible tremor.

(Tr. 1116.)

### a.     Dr. Seo

Plaintiff contends that the Appeals Council and the ALJ erred in analyzing the opinion of his treating physician, Dr. Seo, who opined that Plaintiff had severe limitations in all physical abilities enumerated on the form provided by the state agency.  "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotes omitted).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the

disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.[7] *Id.*

In his February 2013 decision, the ALJ declined to assign controlling weight to Dr. Seo's opinion:

> I am not persuaded by Dr. Seo's opinion because the medical evidence discussed above does not support pain to the degree [Plaintiff] complains of, because when he is distracted his tremors stop, and because his activities of daily living are inconsistent with Dr. Seo's opinion that he can sit, stand, and walk for a total of only 5 hours a day.  This opinion implies that [Plaintiff[ is bedridden for 19 hours a day, which is not supported by the evidence.

(Tr. 1136.)  The Appeals Council concluded that, "Dr. Seo's opinion cannot receive controlling weight because [her] opinion is not consistent with other substantial evidence. . . . [This opinion is] not consistent with the medical evidence of record described above that report that [Plaintiff] had no pains, muscular weakness, or atrophy. [This opinion is] also inconsistent with the medical opinions from [agency consulting physicians] Drs. Hinzman and Allison."  (Tr. 1117.)

Plaintiff raises several objections to the Commissioner's analysis of Dr. Seo's opinion.  He contends that the ALJ did not point to specific medical evidence in the record

---

[7] Plaintiff also contends that the Appeals Council failed to identify Dr. Seo as his treating physician.  The Appeals Council concluded that Dr. Seo's opinion "could not receive controlling weight."  (Tr. 1117.)  Although not an explicit acknowledgment that Dr. Seo was a treating physician, the reference to "controlling weight" reflects that the Appeals Council was aware that Dr. Seo was Plaintiff's treating physician.

to support his analysis of Dr. Seo's opinion.  This arguments lack merit.[8]  In the particular

paragraph addressing whether Dr. Seo's opinion was entitled to controlling weight, the ALJ

made general reference to "the medical evidence discussed above" and Plaintiff's

"activities of daily living."  (Tr. 1136.)  Although these general references do not include any

specific description, the ALJ discussed Plaintiff's medical records and his activities of daily

living earlier in the decision, as detailed above.  (Tr. 1131, 1135.)  Accordingly, although the

ALJ did not make detailed reference to the medical records in the specific paragraph in

which he declined to assign great weight to Dr. Seo's opinion, he made general reference

to details from the record that he had already discussed.  Further, the ALJ made explicit

references to specific inconsistencies between Dr. Seo's opinion and the rest of the

record, *i.e.*, Plaintiff's lack of complaints of pain, the fact that Plaintiff's tremors stopped

when he was distracted by medical personnel, and the extent of his activities of daily living.

(Tr. 1136.)

        Plaintiff further argues that neither the ALJ nor the Appeals Council assigned

specific weight to Dr. Seo's opinion.  This is an accurate statement, as neither decision

assigns specific weight to the opinion.  Generally, the failure to assign specific weight to a

treating physician's opinion "constitutes error."  Cole v. Astrue, 661 F.3d 931, 938 (6th Cir.

---

        [8]  Plaintiff also contends that the Appeals Council erred in relying on the medical
evidence unrelated to Plaintiff's tremors or pain to determine that Dr. Seo's opinion was
inconsistent with the record evidence.  Review of the relevant portion of the Appeals
Council decision, however, reveals that, in the excerpt at issue, the Appeals Council was
explaining how the opinions of *the agency consulting physicians* were consistent with
various items of evidence in the record.  For example, the Appeals Council noted that Dr.
Hinzman's assessment that Plaintiff could perform light work with postural limitations was
consistent with medical evidence regarding Plaintiff's lack of pain, and normal muscle bulk
and strength.  (Tr. 1116.)

2011).  This requirement, like the "good reason" and "clear elaboration" requirements, ensures the adequacy of review and gives the claimant better understanding of the disposition of her case.  *Id.* at 939 (citing *Rogers v. Comm'r*, 486 F.3d 234, 242 (6th Cir. 2007)). The failure to assign specific weight to a treating source's opinion, however, can be deemed "harmless error" when, *inter alias*, "the Commissioner has met the goal of [the treating physician rule] . . . even though she has not complied with the terms of the regulation."  *Id.* at 940.

Here, Plaintiff raises only the technical violation of the requirement that the Commissioner assign specific weight to a treating sources's opinion, and then makes the conclusory argument that general references to the medical records are not sufficient to adequately explain the relevant findings.  This argument lacks merit.  Although neither the ALJ nor the Appeals Council assigned specific weight to Dr. Seo's opinion, the two decisions clearly explain that her opinion was entitled to less than controlling weight because it was inconsistent with other record evidence.  Although neither the ALJ nor the Appeals Council discusses that evidence in detail in the portion of the relevant decision that addresses Dr. Seo's opinion, each decision – in particular the ALJ's decision – contains a discussion of the relevant record evidence.  In other words, this is not a case in which the claimant is unable to ascertain the Commissioner's reasons for assigning less than controlling weight to the opinion of his treating physician.  Accordingly, the Commissioner's failure to assign a specific weight to Dr. Seo's opinion presents no basis for remand in this case.

Plaintiff also argues that the Commissioner erred in assigning greater weight to the opinions of the non-examining consulting physicians than to Dr. Seo.  He relies on

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 370 (6th Cir. 2013), in which the Sixth Circuit observed that it was error to rely on the inconsistency between the opinion of a treating physician and the opinion of a non-examining physician to assign less than controlling weight to the treating physician's opinion.  In *Gayheart*, however, the ALJ identified no other basis for assigning less than controlling weight to the opinion of the treating physician other than the inconsistency between that opinion and the opinions of the consulting physicians.  Here, although the Appeals Council pointed to the inconsistency between Dr. Seo's opinion and the opinions of the non-examining consultants, both the ALJ and the Appeals Council identified other bases for assigning her opinion less than controlling weight.  Both the ALJ and Appeals Council noted that Dr. Seo's opinion was inconsistent with other medical evidence and Plaintiff's own reports regarding his activities of daily living.  Accordingly, in this case, *Gayheart* does not require remand.[9]

Plaintiff also contends that the ALJ erred in reasoning that Dr. Seo's opinion would require Plaintiff to be bedridden for 19 hours each day.  According to Plaintiff, "[t]his reasoning is a non-sequitur" because the medical form requested that Dr. Seo state the number of hours that Plaintiff could stand in an eight-hour period.  Even to the extent that the ALJ overstated the extent of the limitation assigned by Dr. Seo, any resulting error

_____

[9] Plaintiff also contends that the Appeals Council erred in relying on the medical evidence unrelated to Plaintiff's tremors or pain to determine that Dr. Seo's opinion was inconsistent with the record evidence.  Review of the excerpt of the Appeals Council decision to which Plaintiff cites, however, reveals that, rather than discussing the inconsistencies between Dr. Seo's opinion and that evidence, the Appeals Council was actually discussing the ways in which the opinions of the agency consultants were consistent with the medical evidence in the record.  (Tr. 1116.)

would not require remand in this case.  The ALJ and the Appeals Council identified other bases for assigning less than controlling weight to Dr. Seo's opinion, and those reasons are evident in the record.  *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004)  ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n.6 (1969)).

Plaintiff further argues that the Appeals Council misstated the controlling-weight test.  Specifically, Plaintiff notes that the Appeals Council characterized Dr. Seo's opinion as "not consistent with other substantial evidence" (tr. 1117), whereas the treating physician rule requires the Commissioner to assign controlling weight to a treating physician's opinion "where it is not inconsistent" with substantial evidence in the record, 20 C.F.R. § 404.1527(c)(2). This argument is unavailing.  The language of the regulation provides that a treating physician's opinion that is inconsistent with other record evidence may not be entitled to controlling weight.  The Appeals Council's statement aligns with the meaning of the regulation.  Plaintiff does not explain the difference between an opinion that is "not consistent" with the record and an opinion that is "inconsistent" with the record. Accordingly, this argument does not merit remand in this case.

Finally, Plaintiff argues that the Appeals Council erred in failing to discuss the fact that the non-examining consultant physicians had not reviewed medical records later than April and December 2009.  He does not, however, explain how medical records for examinations and treatment after April and December 2009 would have rendered the opinions of those physicians unsupported by substantial evidence.  Accordingly, this argument does not merit remand in this case.

### b.    Dr. Poyle

In his decision, the ALJ declined to assign any weight to Dr. Poyle's opinion because "[a] chiropractor is not an acceptable medical source."  (Tr. 1136.)  The Appeals Council made the same conclusion, and also noted that Dr. Poyle's "opinion is not consistent with other substantial evidence."  (Tr. 1117.)  Plaintiff contends that, although Dr. Poyle is not an acceptable medical source, the Commissioner erred in failing to weigh the relevant factors required by 20 C.F.R. § 404.1527(e)(2)(ii).  That regulation, however, addresses the Commissioner's review of the opinions of "State agency medical or psychological consultants, other program physicians and psychologists, and medical experts."  20 C.F.R. § 404.1527(e)(2).

Plaintiff also argues that the ALJ violated Social Security Ruling 06-03p when he assigned no weight to Dr. Poyle's opinion.  That ruling, which guides the agency's consideration of opinions from medical sources that are not "acceptable medical sources," provides factors for use in assessing these types of opinions.  S.S.R. 06-03p, 2006 WL 2329939 (Aug. 9, 2006).  These factors include: the length and frequency of treatment; the consistency of the opinion with the other evidence; the degree to which the opinion presents relevant evidence; how well the source explains the opinion; and whether the source's specialty is relevant to the claimant's impairments.  *Id.* at *4.  The ruling provides, however, that "[n]ot every factor for weighing opinion evidence will apply in every case."  *Id.* at *5.  Here, the Appeals Council determined that Dr. Poyle's opinion was not consistent with the rest of the medical evidence in the record.  Plaintiff does not explain how this explanation violates the requirements of SSR 06-03p.  Accordingly, this argument presents no basis for remand in this case.

23

Finally, Plaintiff argues that the Commissioner overlooked Dr. Poyle's 2009 opinion. Review of the ALJ's decision reveals that the ALJ does not specifically mention Dr. Poyle's 2009 responses to a medical source questionnaire.  (Tr. 568, 1136.)  The Appeals Council decision does not specify whether it refers to Dr. Poyle's 2009 opinion, his 2011 opinion, or both.  (Tr. 1117.)  It is well established that, "'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'"  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2010) (quoting *Loral Defense Systems - Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)) (internal quotation marks and citations omitted).  Further, Plaintiff fails to explain how Dr. Poyle's 2009 opinion, which described less extensive limitations than his 2011 opinion, would have required additional limitations or otherwise altered Plaintiff's RFC.  Accordingly, this arguments fails to articulate a basis for remand in this case.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: December 17, 2014